IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOHNNIE DEMOND JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 5:22-CV-00459-MTT-MSH |
| | : | |
| DEPUTY WARDEN CLARK, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ORDER AND RECOMMENDATION**

Pending before the Court is Defendant Reginald Clark's motion to dismiss Plaintiff Johnnie Demond Jackson's complaint (ECF No. 24).  For the reasons explained below, it is recommended that Defendant's motion be granted.

**BACKGROUND**

Jackson's claims arise from his confinement at Baldwin State Prison ("BSP"). Compl. 3, ECF No. 1.  Jackson alleges that on December 6, 2022, he was waiting in an "E.R. bed" to get a "pain shot" from a nurse to treat degenerative spine disease and other back injuries.  *Id.* at 6.  He contends Clark "demand[ed]" Jackson "get up and walk."  *Id.* Jackson responded he was awaiting a pain shot that had already been approved by medical, described his injuries, and explained he had been brought to medical because he "passed out in [his] cell a few minutes earlier from the back pain."  *Id.*  Jackson states Clark then "threatened and jammed the tazor into [his] collar bone causing [him] injury," and picked Jackson up by the shirt, flipped him over to receive the shot, choked him, and "threw [him] into the wheelchair . . . further[] injuring [his] spine."  *Id.* at 6-7.   Jackson also asserts

Clark retaliated against him for filing a grievance concerning this incident by denying Jackson and his roommate showers on several occasions. *Id.* at 8-9. In addition, Jackson contends Clark threatened to reassign him to general population despite knowing Jackson had already been stabbed by gang members there and would be in danger if forced to move. Compl. 9-10.

The Court received Jackson's complaint on December 30, 2022 (ECF No. 1).[1] After preliminary review, his Eighth Amendment excessive force and First Amendment retaliation claims against Clark were allowed to proceed for further factual development. Order & R. 12, Mar. 17, 2023, ECF No. 11; Order, May 9, 2023, ECF No. 23 (adopting recommendation). Clark filed a motion to dismiss on May 22, 2023 (ECF No. 24). Jackson timely responded (ECF No. 29), and Clark filed a reply brief (ECF No. 34).[2] Defendant's motion is ripe for review.

## DISCUSSION

Clark moves to dismiss, arguing, *inter alia*, Jackson failed to exhaust his administrative remedies. Def's. Br. in Supp. of Mot. to Dismiss 3-12, ECF No. 24-1. Because the Court finds Jackson did not exhaust his administrative remedies, it

---

[1] Although the Court received the original complaint on December 30, 2022, Jackson signed it on December 28, 2022. Compl. 12. "Under the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *Id.*

[2] Jackson moves for leave to file a surreply (ECF No. 36). Surreply briefs are not favored under the local rules. *See* M.D. Ga. L. R. 7.3.1(B). Nevertheless, the Court has reviewed Jackson's proposed surreply (ECF No. 36-1), and because it is helpful to the Court's analysis, Jackson's motion is **GRANTED**.

2

recommends granting Clark's motion and declines to address his other grounds for dismissal.

I.      **Exhaustion Standard**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process. If their initial grievance is denied, prisoners must then file a timely appeal." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (internal citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to

3

address the problem internally." *Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015) (per curiam).

The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant*, 530 F.3d at 1375 ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Further, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376. "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking the plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.* In resolving the factual dispute, a Court is authorized to make credibility determinations. *See Bryant*, 530 F.3d at 1377-78 (finding district court did not clearly err in determining plaintiff's allegation that he was denied access to grievance forms was not credible); *see also Whatley v. Smith*, 898 F.3d 1072, 1082-83 (11th Cir. 2018) (upholding district court finding that one of inmate's grievances was not filed).

A prisoner need only exhaust administrative remedies that are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross*, the Supreme Court held that an administrative

procedure is unavailable under the PLRA when either (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" (2) it is "so opaque that it becomes, practically speaking, incapable of use[,]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. For a remedy to be available, it "must be capable of use for the accomplishment of its purpose." *Turner*, 541 F.3d at 1084 (quotation marks omitted). The burden is on the defendant to show that an administrative remedy is available, but "once that burden has been met, the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (internal quotation marks omitted) (citing *Turner*, 541 F.3d at 1085). District courts must use the two-step *Turner* analysis when addressing the availability of the grievance process. *See Jenkins v. Sloan*, 826 F. App'x 833, 839 (11th Cir. 2020) (per curiam) (directing district courts to apply "the two-step *Turner* test when addressing the question of exhaustion and the *availability* of the grievance process").

**II.   BSP Administrative Procedures**

Clark has submitted the affidavit of Pretrillion Whipple, the Grievance Coordinator at BSP, to establish that administrative remedies were available to Jackson at BSP. Whipple Decl. ¶ 2, ECF No. 24-2. Whipple's responsibilities include overseeing the grievance process at BSP and acting as custodian of institutional grievance records. *Id*. According to Whipple, BSP follows the Georgia Department of Corrections ("GDC")

5

Standard Operating Procedures ("SOPs") regarding grievances. Whipple Decl. ¶ 3.

The SOPs mandate that an inmate must follow a two-step process in order to exhaust his remedies: (1) file an original grievance no later than ten days from the date the inmate knew or should have known of the facts giving rise to the grievance; and (2) file an appeal to the Central Office. Whipple Decl. Attachs. 17, ECF No. 24-2.[3] An inmate is limited to two active grievances, and if an inmate with two active grievances files another, the grievance coordinator will advise the offender he may drop one of the two active grievances to pursue the new grievance. *Id.* at 15-16. After a grievance is filed, the grievance coordinator will screen the grievance and accept it for processing or recommend rejection of the grievance for one of the reasons enumerated in the SOPs, including raising a non-grievable issue, untimeliness, or raising more than one issue. *Id.* at 18. If a grievance is accepted, the warden has forty calendar days from the date the offender submitted the grievance to respond, though a one-time ten-day extension may be granted. *Id.* at 20. An inmate may file an appeal within seven days after the warden issues a decision or after the time allowed for the warden to decide expires. *Id.* at 23. The Commissioner has one hundred and twenty days within which to respond to a grievance appeal. *Id.* at 24. An inmate may also appeal a warden's rejection of a grievance. Whipple Decl. Attachs. 19.

With certain exceptions not applicable here, an inmate "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the

---

[3] Because Whipple's declaration and exhibits were filed together as one document instead of separate attachments, the Court cites to Whipple's exhibits by using the document number and electronic screen page number shown at the top of each page by the Court's CM/ECF software as opposed to any other page number that may appear on the exhibits.

[inmate]." *Id.* at 13. However, when the grievance alleges use of physical force by prison staff which is deemed non-compliant with GDC policies, the "facility shall forward a copy of the grievance packet"—whether the grievance is accepted or rejected—to the GDC Office of Professional Standards, Criminal Investigation Division ("CID") "for review and any action deemed appropriate." *Id.* at 11, 21. If the grievance is accepted and forwarded to the CID, notification will be given to the inmate, who "must" sign an acknowledgement of receipt of the notification. *Id.* at 21. The signing of the notice "effectively closes the grievance."[4] *Id.*

### III. Plaintiff's Grievance

Jackson filed one grievance relevant to the claims in this case. On December 8, 2022—two days after the incident—Jackson submitted Grievance No. 346655. Whipple Decl. Attachs. 42. The grievance described the incident as involving "Retaliation, First Amendment violation[,] 8th Amendment cruel & unjust punishment." *Id.* Jackson stated he was in the medical unit waiting to receive an injection for his back pain when Clark

---

[4] The Court notes under a previous version of this policy, grievances alleging use of physical force deemed not in compliance with GDC policies were "automatically forwarded" to the internal investigation unit and an inmate's submission of a grievance alleging such excessive force "automatically end[ed] the grievance process." *White v. Staten*, 672 F. App'x 919, 921-22 (11th Cir. 2016) (per curiam). The version of the SOP applicable to this case does not provide for automatic exhaustion upon submission of the grievance. Instead, as noted above, it is the inmate's signing of the acknowledgment of referral that "effectively closes the grievance." Whipple Decl. Attachs. 21. The quirk here is the SOP requires the "facility," *i.e.*, the prison, to forward a copy of a grievance alleging physical force "deemed to be non-compliance" to the CID, whereas in this case it was the Central Office that made the referral. *Id.* at 21, 55. Nevertheless, the SOP is clear it is the inmate's acknowledgment of the referral that closes the grievance process, not the referral itself. Moreover, Jackson does not argue his submission of the grievance alone constituted exhaustion of his excessive force claim but instead argues unavailability of an administrative remedy.

demanded he get up and walk. *Id.* at 42-43. After first threatening him with a taser, Clark grabbed Jackson while he laid on his bed, flipped him over, and—after Jackson had received a shot in his buttocks—threw him into a wheelchair and took him back to his assigned dorm. *Id.* at 43. The grievance alleged Clark's actions constituted "retaliation" but did not specify any act for which Clark would purportedly be retaliating. *Id.* Jackson asked for Clark's demotion or firing, and stated if the grievance was denied, for the "appeal to go straight to Atlanta and Inmate Affairs for review." *Id.* at 42.

On December 20, 2022, the Warden denied the grievance, accepting Clark's explanation that he merely escorted Jackson to segregation via wheelchair after he refused to leave the medical unit following his treatment. Whipple Decl. Attachs. 53. Jackson signed an acknowledgement of receipt of the grievance denial on December 22, 2022. *Id.* Jackson appealed the grievance denial the same day. *Id.* at 54. In the grievance appeal, he cited the assault and added Clark was retaliating against him for filing the grievance. *Id.* On January 6, 2023, the Central office responded to the appeal by stating that a copy of the grievance was "forwarded to the [CID] for review and any action deemed necessary." *Id.* at 55. Jackson signed an acknowledgement of receipt of this referral to CID on January 21, 2023. *Id.*

**IV.    Analysis**

Clark contends Jackson failed to exhaust his administrative remedies because (1) he failed to complete the grievance process prior to filing suit and (2) his initial grievance under Grievance No. 346655 did not mention the denial of showers or threat to reassign him to general population. Def.'s Br. in Supp. of Mot. to Dismiss 8-12. Clark notes

8

Jackson submitted his grievance on December 8, 2022, and filed suit on December 28, 2022, but the Central Office did not respond to his appeal until January 6, 2023. *Id.* at 9-10. Further, Jackson did not sign an acknowledgement of the Central Office's response and its CID referral until January 21, 2023. *Id.* at 10. Thus, whether adjudged by when the appellate process was completed or by closing of the grievance upon acknowledgement of the CID referral, Jackson did not exhaust his administrative remedies on his excessive force claim prior to filing suit as required by the PLRA. *Id.* at 10.

Regarding the retaliation claim, Clark refers to the original grievance submitted under Grievance No. 34655, which does not mention denial of showers or threats to reassign Jackson to general population. Whipple Decl. Attachs. 42. He points out that while the original grievance mentioned retaliation, it appeared to relate to some unspecified act occurring prior to or during the December 6, 2022, incident and not to any retaliatory acts occurring in response to Jackson's submission of a grievance over the December 6th incident, which are the subject of this complaint. Def.'s Br. in Supp. of Mot. to Dismiss 9, 11. Even if it did relate, Clark continues, Jackson failed to exhaust his administrative remedies prior to filing suit. *Id.* at 11.

In his response to the motion to dismiss, Jackson does not dispute he filed his lawsuit prior to receiving the Central Office's response to his appeal or his acknowledgement of referral to CID. Instead, he contends his administrative remedies were rendered unavailable under the "imminent danger" exception because of the threat to his safety posed by Clark. Pl.'s Resp. to Mot. to Dismiss 4-5, 7-16, ECF No. 29. Alternatively, he argues the administrative remedies were unavailable because his grievance was not handled

9

by BSP's Americans with Disabilities Act ("ADA") coordinator as provided in the SOPs.[5] *Id.* at 5-6.  Finally, he argues his administrative remedies were unavailable because he was told he already had two active grievances and could not file another.[6] *Id.* at 12.

Applying the *Turner* analysis to Jackson's contention his administrative remedies were unavailable, the Court can dispense with his second and third arguments at the first step.  Assuming BSP's ADA coordinator did not handle Jackson's grievance, that did not render his administrative remedies unavailable because the ADA provision only applies to inmates "grieving requests for accommodation or ADA related complaints."  Whipple. Decl. Attachs. 22.   Jackson's grievance related to neither, instead alleging excessive force. Jackson's contention his administrative remedies were unavailable due to him having two active grievances also fails.  "[C]ourts have consistently held that this limitation does not render the grievance process unavailable under *Ross*."  *Blackwell v. Gardner*, No. 5:19-cv-2-MTT, 2020 WL 1529363, at *1 (M.D. Ga. Mar. 30, 2020) (collecting cases).

Jackson's first argument merits more consideration.  While he refers to an "imminent danger" exception, that concept generally applies to whether inmates who have had three or more previous lawsuits dismissed for frivolity (*i.e.*, "three strikes") may nevertheless proceed *in forma pauperis* ("IFP") if they demonstrate imminent danger of

---

[5] At various points Jackson shifts from arguing his administrative remedies were "unavailable" due to the alleged exceptions he cites to arguing application of the exceptions rendered his administrative remedies "exhausted."  However, he does not argue he exhausted his administrative remedies pursuant to the GDC SOPs, so the  Court will consider his argument as one alleging unavailability of an administrative remedy instead of exhaustion of the remedy.

[6] Because Jackson clearly filed a grievance alleging excessive force, this argument apparently addresses failure to exhaust his retaliation claim.

10

physical injury. *See Daker v. Ward*, 999 F.3d 1300, 1310-11 (11th Cir. 2021); 28 U.S.C. § 1915(g) (barring inmates from proceeding IFP if they had an action dismissed on three or more prior occasions "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury"). Here, Jackson was allowed to proceed IFP under the imminent danger exception, but that alone does not excuse him from exhausting his administrative remedies. Order & R. 1-4, Mar. 17, 2023; *see Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury.").

Nevertheless, while the "imminent danger" exception does not apply to the *Turner* exhaustion analysis, an administrative remedy may be rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through . . . intimidation." *Ross*, 578 U.S. at 644. Jackson alleges after he filed his grievance regarding the December 6, 2022, incident, Clark threatened to place him in general population to be killed by gang members who had already stabbed him once. Pl.'s Resp. to Mot. to Dismiss 7, 9. He also contends Clark has a "physical abuse reputation" and is reportedly "responsible for murdering two inmates." *Id.* at 8. He alleges Clark has "hitmen" at his command. *Id.* at 8. Finally, in his surreply, Jackson claims Clark "started coming by rattling the locks on his door daily." Pl.'s Surreply 2, ECF No. 36-1. Jackson states he filed suit because he "knew that the U.S. Courts and [its] Marshals would make sure that [Clark] would make sure that I was not harmed anymore at B.S.P. in which is the reason I am alive to file this brief in opposition to [the motion to dismiss]." Pl.'s Resp. to Mot. to

11

Dismiss 9. He adds he filed suit prior to completing the grievance process in order to "stop his death." *Id.* at 15. The Court notes in his complaint, Jackson alleged he was filing an "emergency 1983 complaint" due to Clark's threats. Compl. 10.

"A prison official's serious threats of substantial retaliation against an inmate for lodging *or pursuing in good faith* a grievance make the administrative remedy unavailable, and thus lift the exhaustion requirement as to the affected parts of the process . . . ." *Turner*, 541 F.3d at 1085 (internal quotation marks omitted) (emphasis added). Construing Jackson's argument liberally, he alleges the part of the administrative process that required him to wait until he received the Central Office's response to his appeal or notice of referral to CID prior to filing suit was lifted by Clark's threats. Accepting as true Jackson's contention that he was threatened for filing his grievance and this threat is what caused him to file suit prior to completing the grievance process, Clark is not entitled to dismissal at step one.

Moving to step two, the Court must make factual findings to determine if Clark has met his burden of proving Jackson had an available administrative remedy. In this regard, *Turner* only requires a defendant to show a remedy is "generally available." *Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841, 845 (11th Cir. 2020) (per curiam). A defendant need not show that "a remedy was available to [a plaintiff] practically speaking." *Id.* Once the defendant's burden is met, "the burden of going forward shifts to the plaintiff, who . . . must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter*, 974 F.3d at 1356 (internal quotation marks and citation omitted). Here, Clark has met his burden of showing that a grievance procedure was

generally available to Jackson. He has submitted the GDC SOPs outlining the grievance procedures available to BSP inmates along with the grievance Jackson actually submitted. Whipple Decl. Attachs. 10-28, 42-55.

Thus, the burden shifts to Jackson to show the administrative remedy was subjectively and objectively unavailable to him. In order for threats to render an "administrative remedy unavailable, and thus lift the exhaustion requirement," a plaintiff must show "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085.

Here, the Court concludes Jackson fails to show administrative remedies were unavailable to him.[7] Initially, the Court notes Jackson filed a grievance against Clark for excessive force. Then, despite the alleged threats of retaliation for filing the grievance, Jackson submitted an appeal of the denial of the grievance on December 22, 2022, wherein he specifically referenced Clark's "retaliating because of this grievance." Whipple. Decl. Attachs. 54. Further, Jackson claims he attempted to file yet another grievance but was only prevented from doing so because he already had two active grievances. Pl.'s Resp. to Mot. to Dismiss 12; Pl.'s Mot. to File Surreply 2, ECF No. 36. If Clark actually had authority to unilaterally move Jackson into general population—which is the only actual

---

[7] Because the Court concludes Jackson was not deterred from pursuing an administrative remedy, it will not address unavailability from a reasonable inmate standpoint.

threat of physical harm alleged—he could have done so in response to any of these actions. Despite this possibility, and whatever threats Clark may have made, Jackson was not actually thwarted from taking any affirmative action available to him under the SOPs. While Jackson may have subjectively believed filing suit prior to receiving a response to his appeal or referral to CID would somehow regulate Clark's conduct, that does not mean the grievance process was subjectively unavailable.

Because the SOPs required Jackson to receive a response from the Central Office to his appeal or sign an acknowledgement of referral to CID in order to exhaust the grievance process, Jackson's filing of his lawsuit prior to such time requires dismissal of his action. *Brown*, 212 F.3d at 1207 ("[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." (emphasis added)). The fact Jackson has now exhausted his administrative remedies—at least on the excessive force claim—does not obviate requirement. *See Christopher v. Tinker*, No. CV 105-089, 2006 WL 1776358, at *4 (S.D. Ga. June 26, 2006) ("Allowing a prisoner to proceed with his complaint because he exhausts administrative remedies after the fact would contravene the plain language of § 1997e(a) and eviscerate the exhaustion requirement.").

## CONCLUSION

For the reasons explained above, it is recommended that Defendant Reginald Clark's motion to dismiss (ECF No. 24) be **GRANTED**.[8]  Pursuant to 28 U.S.C. §

---

[8] Jackson has also filed a motion for habeas corpus ad testificandum (ECF No. 19), motion for jury trial and speedy trial (ECF No. 20), and motion for treble damages (ECF No. 22).  It is

636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  Any objection should be no longer than TWENTY (20) PAGES in length.  See M.D. Ga. L.R. 7.4.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 10th day of August, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

recommended these motions be **DENIED AS MOOT**.